**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

HUMBERTO DELGADO, JR.,

      Petitioner,

v.                                 Case No. 8:24-cv-126-WFJ-AEP

STATE OF FLORIDA,

      Respondent.

_____/

**<u>ORDER</u>**

Humberto Delgado, Jr., a Florida prisoner proceeding *pro se*, filed an amended petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 8). Respondent submitted a response in opposition. (Doc. 11). Mr. Delgado filed a reply. (Doc. 12). After careful review, the amended petition is **DENIED**.

**I.      Background**

This case arises from the shooting death of Corporal Michael Roberts of the Tampa Police Department. On the evening of August 19, 2009, Corporal Roberts observed Mr. Delgado "pushing a shopping cart along the roadway in an area known for shopping cart theft and other crimes committed by homeless individuals." *Delgado v. State*, 162 So. 3d 971, 973 (Fla. 2015). Corporal Roberts told dispatch that he "was about to conduct a routine field investigation." *Id.* He then "pulled his police cruiser onto the side of the road and stopped [Mr. Delgado] for questioning." *Id.* Mr. Delgado produced identification, and Corporal Roberts "began to search the shopping cart and the backpack [Mr. Delgado] was

1

transporting in the cart." *Id.* Mr. Delgado became "concerned" that Corporal Roberts would discover the "four firearms" he kept in the backpack. *Id.* He tried to flee, whereupon Corporal Roberts "tasered him." *Id.* A fistfight "broke out" between the two men; it ended when Mr. Delgado shot Corporal Roberts. *Id.*

Soon after the shooting, Mr. Delgado "called his uncle." *Id.* He said that "after a scuffle with an officer, [he] had shot the officer, the officer was on the ground, and [he] thought the officer might be dead." *Id.* Mr. Delgado's stepmother heard the conversation via speakerphone. *Id.* According to her, Mr. Delgado said, "Uncle, forgive me. Uncle, forgive me. I think I killed a police officer. Uncle, forgive me. I think that I am going to kill myself." *Id.*

Sergeant Paul Mumford arrived on the scene and saw Corporal Roberts's "motionless body on the ground." *Id.* Realizing that Mr. Delgado was "a possible suspect," Sergeant Mumford "began running after [him], telling him to stop." *Id.* Mr. Delgado retrieved a handgun from his backpack and pointed it "directly" at Sergeant Mumford. *Id.* at 974. Sergeant Mumford "sought cover behind a building," but Mr. Delgado "did not shoot." *Id.* Mr. Delgado then ran toward a park "with the weapon still in his hand." *Id.* Soon after, "a K-9 unit apprehended [Mr. Delgado], who was hiding in a wood pile in the yard of a nearby home." *Id.* Officers retrieved the murder weapon—a .45 caliber handgun—from Mr. Delgado's left front pocket. (Doc. 11-2, Ex. 16, at 1690-91). They also found Corporal Roberts's "handheld police radio" "[a]t the scene where [Mr. Delgado] was apprehended." *Delgado*, 162 So. 3d at 974.

Mr. Delgado was charged with first-degree murder, aggravated assault on a law enforcement officer, carrying a concealed firearm, and depriving an officer of means of communication. (Doc. 11-2, Ex. 2). The prosecution filed a notice of intent to seek the death penalty for the murder charge. (*Id.*, Ex. 3). At the guilt phase, Mr. Delgado raised an insanity defense, pointing to his extensive history of serious mental illness.[1] (*Id.*, Ex. 16, at 2736-46). The jury found him guilty of first-degree felony murder and the other charged offenses. (Doc. 11-3, Ex. 17). The penalty phase focused on Mr. Delgado's mental illness. *Delgado*, 162 So. 3d at 977-80. The jury recommended death by a vote of eight to four, and the trial court sentenced Mr. Delgado to death for first-degree felony murder. (Doc. 11-3, Ex. 25, at 20-21). Mr. Delgado also received concurrent terms of fifteen years' imprisonment for aggravated assault, five years' imprisonment for carrying a concealed firearm, and five years' imprisonment for depriving an officer of means of communication. (*Id.* at 21).

The Florida Supreme Court affirmed Mr. Delgado's convictions but "reverse[d] his sentence of death and remand[ed] to the trial court with directions to impose a life sentence." *Delgado*, 162 So. 3d at 983. The Court explained that it was "compelled to reduce [Mr. Delgado's] sentence to life imprisonment because death [was] not a proportionate penalty when compared to other cases." *Id.* On remand, the trial court directed the clerk to prepare "an amended sentence . . . reflecting that [Mr. Delgado] is

---

[1] Dr. Michael Maher opined that "at the time of the confrontation with the police and his firing a weapon," Mr. Delgado "did not have the capacity to understand that [what he was doing] was wrong" because he was "in a psychotic, delusional state." (Doc. 11-2, Ex. 16, at 2381).

sentenced to life imprisonment" for first-degree felony murder. (Doc. 11-3, Ex. 34). In a footnote, the court explained that "the conformance of [Mr. Delgado's] sentence to the Florida Supreme Court's pronouncement of sentence is a ministerial act which does not require [his] presence." (*Id.* at 1 n.1). The clerk entered an amended judgment in accord with the court's instructions. (*Id.*, Ex. 35). That judgment was affirmed on appeal. (*Id.*, Ex. 41).

Mr. Delgado subsequently moved for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 11-4, Exs. 48, 50, 53). The postconviction court summarily denied all claims save two. (*Id.*, Exs. 54, 56, 58). The court held an evidentiary hearing on the remaining claims, after which it entered a written order denying relief. (*Id.*, Exs. 59, 60). The appellate court affirmed in an unexplained decision. (*Id.*, Ex. 65). This federal habeas petition followed. (Docs. 1, 8).

## II.     Standards of Review

### A.     AEDPA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The appellate court in Mr. Delgado's case affirmed the denial of postconviction relief without discussion. This decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues

a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018).

### B.    Exhaustion of State Remedies; Procedural Default

A federal habeas petitioner must exhaust his claims in state court before presenting them in his federal habeas petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999).

6

A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson*, 353 F.3d at 892.

### C.    Ineffective Assistance of Counsel

Mr. Delgado alleges ineffective assistance of counsel. Ineffective-assistance-of-counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Mr. Delgado must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To demonstrate prejudice, Mr. Delgado must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at

105 (internal quotation and citations omitted); *see also Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim—which is governed by the deferential *Strickland* test—through the lens of AEDPA deference, the resulting standard of review is doubly deferential."). "The question [on federal habeas review of an ineffective-assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

## III.    Discussion[2]

### A.    Ground One—Actual Innocence and Allegedly Unlawful Search

Mr. Delgado argues that (1) he is innocent of the charged offenses, (2) Corporal Roberts violated the Fourth Amendment by stopping him and conducting a search "without . . . justification," and (3) trial counsel was ineffective for failing to seek suppression of the "fruits" of the allegedly "illegal search." (Doc. 1 at 7, 25-26). Each argument fails.

---

[2] In his amended petition, Mr. Delgado occasionally raises the same claim in multiple grounds. For example, in Grounds Two and Three, he alleges that trial counsel was deficient for failing to "investigate" Corporal Roberts's "cause of death." (Doc. 1 at 9-10). For clarity's sake, the Court adopts the numbering scheme used in Respondent's opposition. (Doc. 11). This order addresses each claim in Mr. Delgado's amended petition and accompanying memorandum of law. *See Clisby v. Jones*, 960 F.2d 925, 934 (11th Cir. 1992) (instructing "district courts within this circuit to resolve all constitutional claims presented in a petition for writ of habeas corpus . . . before granting or denying relief"). But the Court does not consider any claims raised for the first time in Mr. Delgado's reply. *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("[A]rguments raised for the first time in a reply brief are not properly before a reviewing court.").

First, Mr. Delgado's freestanding claim of actual innocence cannot provide a basis for federal habeas relief. *See Cunningham v. Dist. Attorney's Office*, 592 F.3d 1237, 1273 (11th Cir. 2010) ("[An] assertion of actual innocence, by itself, is not enough."); *Jordan v. Sec'y, Dep't of Corr.*, 485 F.3d 1351, 1356 (11th Cir. 2007) ("[O]ur precedent forbids granting habeas relief based upon a claim of actual innocence . . . ."); *Collins v. Sec'y, Dep't of Corr.*, 809 F. App'x 694, 696 (11th Cir. 2020) (holding that petitioner's "freestanding actual innocence claim [was] not cognizable and the district court properly denied it").

Second, Mr. Delgado failed to exhaust his Fourth Amendment claim. "Consistent with the purpose of the exhaustion rule, state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Freeman v. Comm'r, Ala. Dep't of Corr.*, 46 F.4th 1193, 1217 (11th Cir. 2022). Mr. Delgado did not raise his Fourth Amendment claim on direct appeal. (Doc. 11-3, Exs. 29, 38). He cannot return to state court to present it in a successive direct appeal. *See* Fla. R. App. P. 9.140(b)(3). Thus, the Fourth Amendment claim is procedurally defaulted. Because Mr. Delgado provides no basis to excuse the default, the claim is barred from federal habeas review.

Third, Mr. Delgado failed to properly exhaust his claim that counsel was ineffective for not filing a motion to suppress. In his Rule 3.850 motion, Mr. Delgado argued that counsel should have challenged Corporal Roberts's allegedly "illegal search." (Doc. 11-4, Ex. 48, at 3). The postconviction court summarily denied this claim and several others. (*Id.*, Ex. 54, at 3-7). It found that Mr. Delgado could not show "prejudice" because counsel

raised the Fourth Amendment argument in a "motion for judgment of acquittal," and the trial court "rejected" it. (*Id.* at 6). Thus, there was no basis to conclude that "a different outcome would have been reached if counsel had raised the argument in a motion [to] suppress rather than in a motion for judgment of acquittal." (*Id.* at 6-7). The postconviction court later held an evidentiary hearing on Mr. Delgado's two remaining claims, both of which were denied in a written order. (*Id.*, Exs. 59, 60).

"When at least one postconviction claim is resolved after an evidentiary hearing, an appellant must brief all claims he wishes the appellate court to review, including those claims denied without a hearing." *Holloman v. Sec'y, Dep't of Corr.*, No. 8:19-cv-2953-CEH-SPF, 2023 WL 2570048, at *4 (M.D. Fla. Mar. 20, 2023). In his appellate brief, Mr. Delgado did not preserve his claim that counsel should have filed a motion to suppress. (Doc. 11-4, Ex. 63). Instead, he briefed the two claims that were denied after the evidentiary hearing. (*Id.* at 8-16). To be sure, Mr. Delgado stated that, "[w]ith regard[] to the summarily denied grounds," the "arguments . . . in his postconviction motion" "speak for themselves." (*Id.* at 5). But "[m]erely making reference to arguments below without further elucidation does not suffice to preserve issues." *Simmons v. State*, 934 So. 2d 1100, 1118 n.14 (Fla. 2006). Mr. Delgado thus "waived" any argument related to counsel's failure to seek suppression. *Id.*; *see also Mendoza v. State*, 87 So. 3d 644, 663 n.16 (Fla. 2011) ("To the extent [appellant] seeks to incorporate by reference the other factual bases and arguments thereto raised in his motion to disqualify for purposes of appeal, having cited in his brief the record pages of the motion to disqualify and providing no argument, the rules of appellate procedure do not authorize that practice.").

10

Mr. Delgado cannot return to state court to exhaust his ineffective-assistance claim because Florida law does not allow for a second appeal from the denial of a Rule 3.850 motion. *See* Fla. R. App. P. 9.141(b). Therefore, the claim is procedurally defaulted. Because Mr. Delgado presents no basis to excuse the default, his assertion of ineffective assistance is barred from federal habeas review.[3]

## B.    Ground Two—Imposition of Life Sentence *in Absentia* and Without Counsel

As explained above, the Florida Supreme Court "reverse[d] [Mr. Delgado's] sentence of death and remand[ed] to the trial court with directions to impose a life sentence." *Delgado*, 162 So. 3d at 983. On remand, the trial court ordered the clerk to prepare "an amended sentence . . . reflecting that [Mr. Delgado] is sentenced to life imprisonment" for first-degree felony murder. (Doc. 11-3, Ex. 34). The court explained that "the conformance of [Mr. Delgado's] sentence to the Florida Supreme Court's pronouncement of sentence is a ministerial act which does not require [his] presence." (*Id.* at 1 n.1).

Mr. Delgado argues that the court violated the federal constitution by imposing a life sentence "*in absentia* without counsel." (Doc. 1 at 26). This claim fails because Mr. Delgado cannot show that the sentencing procedure was "contrary to, or involved an

---

[3] Even if Mr. Delgado had properly exhausted his ineffective-assistance claim, he would not be entitled to relief. The postconviction court reasonably found no "prejudice" from the failure to file a motion to suppress because counsel raised the Fourth Amendment argument in a "motion for judgment of acquittal," and the trial court "rejected" it. (Doc. 11-4, Ex. 54, at 6). As the court explained, Mr. Delgado failed to show that "a different outcome would have been reached if counsel had raised the argument in a motion [to] suppress rather than in a motion for judgment of acquittal." (*Id.* at 6-7).

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

"'[C]learly established Federal law' for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014). The Supreme Court has repeatedly cautioned lower courts against framing its decisions at "a high level of generality." *Nevada v. Jackson*, 569 U.S. 505, 512 (2013); *see also Brown v. Davenport*, 596 U.S. 118, 136 (2022) (noting that "holdings that speak only at a high level of generality" "cannot supply a ground for relief" under AEDPA). Accordingly, "it is not 'an unreasonable application of' 'clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Knowles*, 556 U.S. at 122; *see also Reese v. Sec'y, Fla. Dep't of Corr.*, 675 F.3d 1277, 1288 (11th Cir. 2012) ("The Supreme Court has reiterated, time and again, that, in the absence of a clear answer—that is, a holding by the Supreme Court—about an issue of federal law, we cannot say that a decision of a state court about that unsettled issue was an unreasonable application of clearly established federal law.").

Sentencing is "a critical stage of the proceedings against the accused, at which he is constitutionally entitled to be present and represented by counsel." *United States v. Huff*, 512 F.2d 66, 71 (5th Cir. 1975) (citing *Mempa v. Rhay*, 389 U.S. 128 (1967)). But the "Supreme Court has not concluded that a defendant has the right to be present with counsel . . . at a proceeding in which the sentencing judge has no discretion to deviate from a sentence mandated by a higher court." *LeCroy v. McNeil*, No. 08-80653-CIV, 2009 WL

10698385, at *4 (S.D. Fla. May 26, 2009), *adopted by* 2009 WL 10698358 (S.D. Fla. July

27, 2009), *aff'd*, 397 F. App'x 554 (11th Cir. 2010). Indeed, several lower courts have held

that a defendant has no "constitutional right to be present" with counsel when "the terms

of [an appellate] mandate direct[] a specific sentence." *United States v. Sabatino*, 963 F.2d

366, 366 (1st Cir. 1992); *see also Colbert v. Haynes*, 954 F.3d 1232, 1236 (9th Cir. 2020)

("[A]n offender has no constitutional right to be present or to have counsel when a court

makes a ministerial sentencing correction."); *United States v. Jackson*, 923 F.2d 1494, 1497

(11th Cir. 1991) ("In constitutional terms, a remedial sentence reduction is not a critical

stage of the proceedings; so, the defendant's presence is not required.").

Here, the Florida Supreme Court "remand[ed] to the trial court with directions to

impose a life sentence" for first-degree felony murder. *Delgado*, 162 So. 3d at 983. These

"remand instructions left the state trial court with no discretion on resentencing." *LeCroy*,

397 F. App'x at 556. Indeed, with the death penalty off the table, a sentence of life without

parole was "mandatory" for "first-degree felony murder." *Rocker v. State*, 122 So. 3d 898,

901 (Fla. 2d DCA 2013). In these circumstances, a reasonable jurist could agree that "the

conformance of [Mr. Delgado's] sentence to the Florida Supreme Court's pronouncement

of sentence [was] a ministerial act which [did] not require [his] presence" or the

appointment of counsel. (Doc. 11-3, Ex. 34, at 1 n.1). Thus, Mr. Delgado is not entitled to

relief. *See Fatir v. Thomas*, 106 F. Supp. 2d 572, 583-85 (D. Del. 2000) (petitioner had no

clearly established right to be present with counsel at resentencing because trial court had

"no discretion whatsoever to deviate from [the appellate court's] mandate that [petitioner]

be sentenced to life imprisonment without benefit of parole").

C.      Ground Three—Decision to Pursue Insanity Defense

Mr. Delgado contends that trial counsel was ineffective for "pursuing an insanity

defense" without his informed consent. (Doc. 1 at 31). According to Mr. Delgado, "he was

unaware that by using the insanity defense he would be admitting to the shooting and

killing of Corporal Roberts." (*Id.* at 32). Mr. Delgado alleges that, had he known an insanity

defense entailed such an admission, "he would have never agreed to [it]." (*Id.*) In Mr.

Delgado's view, counsel violated his right to "maintain [his] innocence of the charged

criminal acts." (*Id.* at 31).

The postconviction court held an evidentiary hearing on this claim. (Doc. 11-4, Ex.

59). Mr. Delgado testified that he "agreed in allowing [counsel] to move forward [with] an

insanity defense," but he did not realize the defense would require "admitting to having

shot and killed Corporal Roberts." (*Id.* at 8). Counsel offered a different account. He

testified that Mr. Delgado "accepted . . . [his] representation that the most plausible defense

. . . was . . . insanity." (*Id.* at 40). Counsel explained that a "who-done-it defense" was a

non-starter because "nothing in . . . the facts [or] the investigation . . . would lead anyone

to think" that "another shooter" was involved. (*Id.* at 38, 40). Counsel also noted that he

"explain[ed]" to Mr. Delgado that an insanity defense would "mean admitting basically

that he was there, that he was the one who . . . fired the weapon, . . . but that he just didn't

know what he was doing at the time." (*Id.* at 40). According to counsel, Mr. Delgado was

"ultimately . . . willing to . . . allow us to present [an insanity defense]." (*Id.* at 46).

The postconviction court rejected Mr. Delgado's ineffective-assistance claim,

holding that counsel did not "act[] deficiently in presenting an insanity defense." (*Id.*, Ex.

60, at 5). The court deemed counsel's "testimony" to be "more credible than [Mr. Delgado's] testimony based on their demeanors in the courtroom." (*Id.*) Having made that credibility determination, the court found that Mr. Delgado "agreed to presenting an insanity defense," and that he and counsel "discussed . . . what presenting such a defense would involve." (*Id.*) Specifically, the court credited counsel's statement that Mr. Delgado "agreed with the decision to present an insanity defense after discussing that such a defense would require [him] to admit he committed the shooting." (*Id.* at 6). Moreover, because no evidence "suggested a different shooter," counsel was not deficient for failing to argue that "[Mr. Delgado] was not the shooter." (*Id.*)

The rejection of this claim was reasonable. The Sixth Amendment guarantees a criminal defendant "[a]utonomy to decide that the objective of the defense is to assert innocence." *McCoy v. Louisiana*, 584 U.S. 414, 422 (2018). Thus, "[w]hen a client expressly asserts that the objective of 'his defense' is to maintain innocence of the charged criminal acts, his lawyer must abide by that objective and may not override it." *Id.* at 423 (citation omitted). "[A] violation of the Sixth Amendment autonomy right is a structural error, entitling the defendant to a new trial without the need to show prejudice, because the error both negates the defendant's right to make [] fundamental choices about his own defense and impacts the trial in ways that are immeasurable." *United States v. Hashimi*, 110 F.4th 621, 628 (4th Cir. 2024).

Mr. Delgado's claim turned on a credibility determination. The postconviction court deemed counsel's "testimony" to be "more credible than [Mr. Delgado's] testimony based on their demeanors in the courtroom." (Doc. 11-4, Ex. 60, at 5). The court then found that

Mr. Delgado "agreed with the decision to present an insanity defense after discussing that such a defense would require [him] to admit he committed the shooting." (*Id.* at 6). "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review." *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011). Mr. Delgado has not shown by "clear and convincing evidence" that the court's credibility determination was erroneous. 28 U.S.C. § 2254(e)(1). Thus, he cannot overcome the "presumption of correctness" afforded that determination. *Consalvo*, 664 F.3d at 845.

Based on the postconviction court's reasonable determination of the facts—that Mr. Delgado gave his informed consent to an insanity defense—counsel did not violate his client's Sixth Amendment right to autonomy. *See Jurado v. Davis*, 12 F.4th 1084, 1101 (9th Cir. 2021) (no violation of autonomy right where defendant did not "oppose[]" counsel's strategy); *Acuna v. United States*, 494 F. App'x 961, 962 (11th Cir. 2012) (no Sixth Amendment violation "where the defendant ultimately concurred in his counsel's tactical decision or strategy"). Moreover, given the overwhelming evidence that Mr. Delgado was the shooter, "some reasonable lawyer" could have decided to pursue an insanity defense. *Bates v. Sec'y, Fla. Dep't of Corr.*, 768 F.3d 1278, 1295 (11th Cir. 2014). Indeed, that defense was supported by the testimony of Dr. Maher, who opined that "at the time of the confrontation with the police and his firing a weapon," Mr. Delgado "did not have the capacity to understand that [what he was doing] was wrong" because he was "in a psychotic, delusional state." (Doc. 11-2, Ex. 16, at 2381). Thus, the postconviction court reasonably rejected Mr. Delgado's claim.

16

### D.        Ground Four—Failure to "Investigate" Corporal Roberts's Death

Mr. Delgado contends that trial counsel should have "investigate[d]" Corporal Roberts's death and "hire[d] [an] expert to show that" Mr. Delgado "could not have caused [the] death." (Doc. 1 at 33). According to Mr. Delgado, an expert could have shown that (1) the medical examiner "lied" when she testified that she "recovered the . . . bullet that killed the victim" from his "abdominal area," (2) an "abrasion" on Corporal Roberts's body was in fact an "exit wound," (3) the prosecution presented "fabricated evidence" when its witnesses testified that the bullet "matched [Mr. Delgado's] firearm," and (4) Mr. Delgado could not have been the shooter because he is "right-handed." (*Id.* at 21-24).

The postconviction court held an evidentiary hearing on this claim. (Doc. 11-4, Ex. 59). Mr. Delgado testified that counsel "never investigated" Corporal Roberts's "real cause of . . .death," nor did he hire an "independent ballistics expert to review [the] evidence." (*Id.* at 16-17). Mr. Delgado acknowledged, however, that he did not currently "have an expert" who could challenge the prosecution's forensic evidence. (*Id.* at 24-25). Counsel testified at the hearing as well. He explained that he had retained an expert—Terrence LaVoy—to review the ballistics evidence before trial. (*Id.* at 35). Mr. LaVoy told counsel that "there would be no reason to call him as a witness because he could not refute what was being said [by the prosecution] about the firearm . . . and the bullet." (*Id.*) As for the medical examiner's testimony, counsel explained that "there were multiple people who were present for the autopsy," that it would not be "plausible" to suggest that the "bullet was not recovered during that autopsy," and that he had no "reason" to doubt that the medical examiner accurately described the abrasion on Corporal Roberts's body. (*Id.* at 43-

44). Furthermore, counsel testified that nothing in the record "would lead anyone to think [it] was remotely possible" that someone other than Mr. Delgado was the shooter. (*Id.* at 38).

The postconviction court rejected Mr. Delgado's ineffective-assistance claim, finding no evidence of "deficient conduct." (*Id.*, Ex. 60, at 8). The court began by deeming counsel's testimony "more credible than [Mr. Delgado's] testimony based on their demeanors in the courtroom." (*Id.*) The court then credited counsel's statement that he "retain[ed] a ballistics expert but the expert did not discover information favorable to the defense." (*Id.*) The court also accepted counsel's testimony that "the defense did not discover any information suggesting a shooter other than [Mr. Delgado]." (*Id.*) Moreover, the court noted that "other than his own testimony, which [was not] credible," Mr. Delgado "did not present evidence challenging the medical examiner's testimony at trial that she recovered the bullet from the victim's abdomen." (*Id.*) Nor did Mr. Delgado "present any credible evidence supporting his allegation that he could not have fired the fatal bullet because of his position and because he is right-handed." (*Id.*) Thus, Mr. Delgado failed to "demonstrate[] [that] his attorney acted deficiently for failing to investigate the cause of death and failing to hire an expert to show [he] could not have caused the victim's death." (*Id.* at 7).

This ruling was reasonable. "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which is "different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Richter*, 562 U.S. at 101. Thus, to prevail on his ineffective-assistance claim, Mr. Delgado must "show

that no reasonable jurist could find that his counsel's performance fell within the wide range of reasonable professional conduct." *Franks v. GDCP Warden*, 975 F.3d 1165, 1176 (11th Cir. 2020).

Mr. Delgado fails to make this showing. First, the postconviction court reasonably concluded that counsel "retain[ed] a ballistics expert but the expert did not discover information favorable to the defense." (Doc. 11-4, Ex. 60, at 8). That finding rested on a credibility determination, and Mr. Delgado has not presented any evidence—much less "clear and convincing evidence"—that the credibility determination was erroneous. 28 U.S.C. § 2254(e)(1). Thus, he fails to overcome the "presumption of correctness" afforded that determination. *Consalvo*, 664 F.3d at 845. Having found that counsel retained a ballistics expert, the court correctly rejected Mr. Delgado's assertion that counsel failed to investigate the firearm evidence. *See Owens v. Sec'y, Dep't of Corr.*, No. 5:14-cv-266-RH-GRJ, 2017 WL 9440396, at *8 (N.D. Fla. Apr. 18, 2017) (petitioner "cannot demonstrate deficient performance when counsel did what [he] wanted him to do"), *adopted by* 2017 WL 2861651 (N.D. Fla. July 5, 2017).

Second, the postconviction court reasonably determined that Mr. Delgado (1) presented no evidence "challenging the medical examiner's testimony . . . that she recovered the bullet from the victim's abdomen," and (2) failed to offer "any credible evidence supporting his allegation that he could not have fired the fatal bullet because of his position and because he is right-handed." (Doc. 11-4, Ex. 60, at 8). Mr. Delgado did not identify any expert who could have supported these allegations. Indeed, he admitted that he did not "have an expert" who could challenge the prosecution's forensic evidence.

(*Id.*, Ex. 59, at 24-25). "Without some specificity as to the proposed expert's testimony, any assertion that an expert would testify consistently with [Mr. Delgado's] claims [was] mere speculation and [did] not entitle him to [] relief." *Finch v. Sec'y, Dep't of Corr.*, 643 F. App'x 848, 852 (11th Cir. 2016). Thus, Mr. Delgado failed to establish that counsel provided ineffective assistance.[4] *See Holt v. Sec'y, Fla. Dep't of Corr.*, 489 F. App'x 336, 338 (11th Cir. 2012) (state court reasonably rejected *Strickland* claim because "[i]t [was] speculative that an expert witness would in fact have testified" the way petitioner wanted); *Moore v. Sec'y, Fla. Dep't of Corr.*, No. 3:06-cv-127-MMH, 2022 WL 4133198, at *23 (M.D. Fla. Sept. 12, 2022) ("[Petitioner's] claim about the testimony of expert witnesses is speculative because he does not specify the substance of the proposed experts' testimony, and he presumes the experts would have testified favorably to the defense.").

## IV.    Conclusion

Accordingly, the Court **ORDERS**:

1. Mr. Delgado's amended petition (Doc. 8) is **DENIED**.

2. The **CLERK** is directed to enter judgment against Mr. Delgado and to **CLOSE** this case.

---

[4] In his memorandum of law, Mr. Delgado cites *Ake v. Oklahoma*, 470 U.S. 68 (1985), for the proposition that the "state must provide an indigent defendant with access to a mental health expert to help assist in his or her defense." (Doc. 1 at 35). "In *Ake*, the Supreme Court held that an indigent defendant who shows that his sanity at the time of the offense will be a significant factor at trial must have access to a competent psychiatrist, thus enabling him to present an effective defense." *Duren v. Hopper*, 161 F.3d 655, 664-65 (11th Cir. 1998). To the extent that Mr. Delgado asserts an *Ake* claim, it is unexhausted and procedurally defaulted because he never raised the issue in state court. Regardless, Mr. Delgado cannot establish an *Ake* violation because Dr. Maher—a "competent psychiatrist"—testified in support of his insanity defense at trial. *Id.*

3. Mr. Delgado is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a certificate of appealability, Mr. Delgado must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Mr. Delgado has not made the requisite showing. Because Mr. Delgado is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on August 5, 2025.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE